# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NATIONAL ASSOCIATION for the ADVANCEMENT of MULTIJURISDICTION PRACTICE (NAAMJP), Marinna L. Callaway, Jose Jehuda Garcia, Dale E. Workman, W. Peyton George<br><br>      Plaintiffs<br><br>  vs.<br><br><br><br>  Defendants,<br><br>Hon. Eric H. Holder, Jr., Attorney General, Deborah K. Chasanow, Chief Judge, United States District Court for the District of Maryland, Richard D. Bennett, Catherine C. Blake, James K. Bredar, Theodore D. Chuang, Marvin J. Garbis, Paul W. Grimm, George J. Hazel, Ellen L. Hollande, Peter J. Messitte, J. Frederick Motz, William M. Nickerson, William D. Quarles Jr., George L. Russell III,  Roger W. Titus | CIVIL ACTION NO.<br><br>COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF TO ABROGATE LOCAL RULE 101 & 701 AND TO AMEND AND ENLARGE  THEM TO PROVIDE GENERAL ADMISSION PRIVILEGES TO ALL SISTER-STATE ATTORNEYS ADMITTED IN GOOD STANDING IN ANY STATE SUPREME COURT OR THE UNITED STATES COURT UNDER:<br>1.  28 U.S.C. §§ 2071-72<br>2.  SUPREMACY CLAUSE<br>3.  FIRST AMENDMENT<br>4.   FIFTH AMENDMENT EQUAL PROTECTION<br>5.  FIFITH AMENDMENT DUE PROCESS<br><br>MULTI-DISTRICT LITIGATION<br>28 U.S.C. § 1407 |

## INTRODUCTION

1.   The First Amendment provides that Congress shall make no law abridging the freedoms of speech, association, and to petition the government for the redress of grievances. It is well settled law that "Courts, too, are bound by the First Amendment." The United States Supreme Court has squarely held that bar admission on motion for out-of-state attorneys is constitutionally protected, and the norm for bar admission on motion is comity. *Supreme Court of Virginia v. Friedman*, 487 U.S. 59 (1988).  The United States Supreme Court has also held "the location of a lawyer's office simply has nothing to do with his or her intellectual ability or experience in litigating cases in Federal District Court." *Frazier v. Heebe, Chief Judge, United States District Court for the Eastern District of Louisiana et. al*, 482 U.S. 641, 649 (1987)(holding *pro hac vice* admission is not a reasonable alternative for an out-of-state attorney who seeks general admission to the District Court, and invalidating Local Rule that excluded out-of-state attorneys.)

2.  Plaintiff allege what the Supreme Court in *Frazier v. Heebe, supra*, footnote 7,  stated in 1988 is even more true twenty-six years later in 2014:

> "Rules that discriminate against nonresident attorneys are even more difficult to justify in the context of federal-court practice than they are in the area of state-court practice, where laws and procedures may differ substantially from State to State. *See* Comisky & Patterson, *The Case for a Federally Created National Bar by Rule or by Legislation*, 55 Temp. L. Q. 945, 960-964 (1982). There is a growing body of specialized federal law and

a more mobile federal bar, accompanied by an increased demand for specialized legal services regardless of state boundaries. *See* Simonelli, *State Regulation of a Federal License to Practice Law*, 56 N. Y. State Bar J. 15 (May 1984). The Court's supervisory power over federal courts allows the Court to intervene to protect the integrity of the federal system, while its authority over state-court bars is limited to enforcing federal constitutional requirements. Because of these differences, the Court has repeatedly emphasized, for example, that disqualification from membership from a state bar does not necessarily lead to disqualification from a federal bar. "

3.   The federal statutory right to counsel is proscribed by 28 U.S. Code §

1654 - ***Appearance personally or by counsel***, provides

In all courts of the United States **the parties may plead and conduct their own cases personally or by counsel as**, by the rules of such courts, respectively, are permitted to manage and conduct causes therein. (Emphasis added)

4.   The Supreme Court first ordered the adoption of the Federal Rules of

Civil Procedure on December 20, 1937 pursuant to Section 2 of the Act of June 19,

1934, Chapter 651 (48 Stat. 1064).  Prior to the adoption of uniform federal civil

procedure, Balkanized forum state procedure governed.  Back then, our nation was

in the midst of the depression, the "separate but equal" era was the law, interstate

highways were not yet developed, and many courtrooms still had spittoons.  We

lived in a far different world.  The purpose of the FRCP was to promote federal

uniformity, and to make federal law subject to federal procedure.

5.   FRCP Rule 1. *Scope and Purpose*, provides:

These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. *They should be*

> *construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding*. (Emphasis added)

6. The District Court's statutory authority to proscribe Local Rules is set forth in the *Rules Enabling Act*, 28 U.S.C. §§ 2071-77; 28 U.S.C. § 2072. *Rules of procedure and evidence*; *power to prescribe*, circumscribes the District Court Local Rule making authority, and provides,

> (b) ***Such (District Court Local) rules shall not abridge, enlarge or modify any substantive right***. (Emphasis added)

The mandatory "shall," normally creates an obligation impervious to judicial discretion. *Lexecon v. Millberg*, 521 U.S. 26, 35 (1998); *Anderson v. Yungkau*, 329 U. S. 482, 485 (1947).

7.   The United States District Courts' Local Rules for bar admission privileges throughout the United States are highly Balkanized. Approximately, one/third of the District Courts are integrated and fully admit all sister-state attorneys in good standing. A majority of District Courts have Local Rules that are segregated and delimit general admission to forum state licensed lawyers, thereby categorically excluding members of the bar from 49 States and the District of Columbia.   Other District Courts, like Maryland, have a hodge-podge of bar admission standards that have nothing to do with federal competence or experience and everything to do with monopoly protection.

8.  This Local Rule Balkanization disables the very purpose of the Federal Rules of Civil procedure to provide uniformity and to **secure** *"the just, speedy, and inexpensive determination of every action and proceeding."* This Local Rule Balkanization results in trespassing 28 U.S.C § 2072 by abridging, enlarging, and modifying a smorgasbord of substantive rights including the right to counsel 28 U.S. Code § 1654), full faith and credit ( 28 U.S. Code § 1738), the First Amendment rights to speech, association, and petition the government for the redress of grievances.

9.  More particularly. Plaintiffs challenge the United States District Court for the District of Maryland's Local Bar Admission Rules:

- Local Rule 701.1 (a)'s restriction that Plaintiffs be admitted in a state *where they have their principal office.*

- Local Rule 701.1 (c)'s holding that Maryland licensed attorneys can have their *principal office* anywhere; but, on the other hand, Plaintiffs are categorically disqualified for general admission if they have their *principal office* in or become a member of a another United States District Court that has a Local Rule that denies membership in its bar to any attorney who is a member of the Maryland Bar maintaining his or her *principal office* in Maryland.

- Local Rule 701.1 (d)'s restriction that any non-Maryland state licensed attorney is categorically disqualified for general admission privileges if his or she has *any office* in Maryland.

- Local Rule 701.2's requirement that an applicant for license renewal who submits the payment will be rejected and denied admission if he or she does not meet all of the Rule 701.1's Balkanized requirements.

10.   Plaintiffs allege, in addition to contravening 28 U.S.C. 2072 and the core purpose of uniform Federal Civil Procedure, the above highly protectionist Maryland's Local Rules are unlawful as the United States Supreme Court has squarely held bar admission on motion is constitutionally protected, and the norm is comity, *Supreme Court of Virginia v. Friedman*, and held "the location of a lawyer's office simply has nothing to do with his or her intellectual ability or experience in litigating cases in Federal District Court." *Frazier v. Heebe*; and Local Rule 701.1(b) does not require government attorneys to have their principal office in a state where they are admitted nor does it impose the same 701.1 (c) and (d) conditions predicate.

11. The bar admission rules further discriminate generally against Plaintiffs and civil litigants because criminal defendants under Rule 201 are permitted to retain any licensed attorney they want, regardless of state licensure or office location. The United States Supreme Court following *Friedman*'s holding that bar

admission on motion is constitutionally protected has further held that difficulties in supervising a nationwide bar membership does not justify discrimination in bar admission. *Barnard v. Thorstenn*, 489 US 546 (1989)  Thus, the Maryland District Court could refer any allegation of professional misconduct by its members to the licensing state, just as it does now for its non-Maryland licensed attorneys, and can expect full faith and credit for its findings.  There is no legitimate governmental interest served by the Maryland District Court (or any other District Court) giving full faith and credit to some state's judicial records and findings but not others.)

12.  Plaintiffs aver Local Rule 701.1 is an irrational overbroad classification scheme and a prior restraint that has nothing what-so-ever to do with an attorney's competence or fitness to practice federal law in the Federal District Court; that it serves no legitimate governmental purpose; that it has the practical effect of perpetuating racial stereotypes and targeting and retaliating against a locally unpopular group (i.e. Non-Maryland lawyers) in the exercise of their First Amendment freedoms to speech, association, and to petition for the redress of grievances; that it is unlawful under the *Rules Enabling Act;* that it unlawfully inverts the Supremacy Clause by allowing Maryland law to trump federal law and the Rules Enabling Act; that it has the intended purpose and practical effect of providing monopoly protection for Maryland licensed lawyers; that it is an antiquated old boys club vestige from a bygone era that continues to exist in this

21st Century, in large part because of the failure of the United States Attorney General to enforce the law because of a Catch-22 conflict of interest.  The Attorney General has both a duty to enforce the law and to defend the government.  These Balkanized Local Rules are the end result of that Catch-22 conflict of interest.

13.  On the other hand, confronted with Balkanized law on gay marriage, the Department of the Treasury issued Internal Revenue Ruling 2013-17 on August 29, 2013. This landmark reverses federal law and declares,

> "The U.S. Department of the Treasury and the Internal Revenue Service (IRS) today ruled that same-sex couples, legally married in jurisdictions that recognize their marriages, will be treated as married for federal tax purposes. The ruling applies regardless of whether the couple lives in a jurisdiction that recognizes same-sex marriage or a jurisdiction that does not recognize same-sex marriage."
>
> …
>
> "Any same-sex marriage legally entered into in one of the 50 states, the District of Columbia, a U.S. territory or a foreign country will be covered by the ruling."

14. The Department of the Treasury based this national legal ruling on the administrative need for a uniform interpretation in all 50 States. It concluded,

> "A rule of recognition based on the state of a taxpayer's current domicile would also raise significant challenges for employers that operate in more than one state, or that have employees (or former employees) who live in more than one state, or move between states with different marriage recognition rules. Substantial financial and administrative burdens would be placed on those employers, as well as the administrators of employee benefit plans. For example, the need for and validity of spousal elections, consents, and notices could change each time an employee, former employee, or spouse moved to a state with different marriage recognition rules…"

15.  Plaintiffs accordingly aver the Department of Justice and this Court for federal bar admission purposes should uniformly treat all lawyers as eligible for general admission privileges, regardless of what state that have been licensed as a lawyer in good standing, or where they have their office. The definition of lawyer should not be contingent on the Balkanized State law, or office location just as the federal definition of legal marriages is not contingent on one State's law for gay and lesbian marriage or where are domiciled.

16. Plaintiffs seek Declaratory and Injunctive Relief providing reciprocal general admission privileges for all sister-state attorneys regardless of what State Supreme Court they are admitted and in good standing, and regardless of where they have their office.

## JURISDICTION AND VENUE

17.  This Court has jurisdiction under 28 U.S.C. § 1331. Venue is appropriate in the District of Maryland.

## MULTIJURISDICTION LITIGATION

18.  This case involves common questions of fact in pending civil cases arising in other United States District Courts. See *National Association for the Advancement of Multijurisdiction Practic*e v.  *Roberts 1:13-CV-1963TFH,* pending in the District of Columbia (challenging that Court's Local Rules for bar admission) and *National Association for the Advancement of Multijurisdiction*

*Practice v.Simandle 1:14-CV-03678*JBSKMW pending in the District of New Jersey challenging that Court's Local Rules for bar admission. Plaintiffs allege this case should be assigned to the Multi-District Litigation Panel pursuant to 28 U.S.C § 1407 for consolidation and coordination of pretrial proceedings. Each of these cases is in the pre-trial stage.

## PARTIES

19.  Plaintiff  NATIONAL ASSOCIATION for the ADVANCEMENT OF MULTIJURISDICTION PRACTICE (NAAMJP) is a public benefit corporation organized under California law with offices in Los Angeles, CA 90025.  Plaintiff, like other corporations such as in *Citizens United v. Federal Election Commission*, 130 S.Ct. 876 (2010) (holding corporations have First Amendment rights), is engaged in interstate commerce and advocacy throughout the United States for the purpose of improving the legal profession, by petitioning for admission on motion in the dwindling minority of jurisdictions that have not yet adopted the ABA's recommendations for reciprocal admission for all lawyers. Plaintiffs' purpose is to transport the constitutional right to petition out of the "separate but equal" era and into the 21st Century. Plaintiff is injured per se by Maryland's Local Rule that requires it to retain a Maryland licensed lawyer to exercise their federal right to petition on matters of public concern in a designated public forum. Plaintiff avers this restriction thwarts the purpose of FRCP 1 to provide the "just, speedy, and

inexpensive" resolution of civil actions and accordingly, irreparably chills its precious First Amendment freedoms. The NAAMJP also asserts association standing because many of its members want to remain anonymous for many reasons including privacy. "An association can bring claims on behalf of its members." *See Summers v. Earth Island Inst.*, 555 U.S. 488, 494, (2009). These members have been handicapped and deprived of their constitutional rights by the Local Rule 701, which is an overbroad prior restraint that categorically disqualifies Plaintiffs and all non-Maryland licensed attorneys general admission privileges in the U.S. District Court for the District of Maryland.

20. Plaintiff MARINNA L. CALLAWAY is an American citizen and a member of the NAAMJP, and an African-American attorney who graduated from De Paul University Law School in 1986. African-Americans make up 12.3% of the population but only 4.7% of attorneys. She is an honorably discharged Veteran admitted in Illinois with extensive experience in criminal law. Ms. CALLAWAY has served: as Judge Advocate in the Air Force for six years, as an Assistant Public Defender in Illinois, as an Assistant State's Attorney in Illinois, and she was a registered In-House Counsel in California. Ms. CALLAWAY is handicapped because she is categorically disqualified because her principal office location is in a state where she is not presently admitted. Ms. CALLAWAY, as lawyer and citizen, is disabled by the challenged Local Rule, which affords her and other

African-Americans second-class treatment.    Ms. CALLAWAY will apply for admission to the U.S. District Court for the District of Maryland bar if the Local Rule is changed as requested in this Complaint.

31. Plaintiff JOSE JEHUDA GARCIA is an American citizen and a member of the NAAMJP, a graduate of an ABA accredited law school, and a well-qualified Hispanic-American lawyer in good standing admitted to the bar of the New Mexico Supreme Court . Latinos make up 15.8%t of the population but only 2.8% of attorneys are Hispanic.   The first Mexican-American lawyer who argued a case in the United States Supreme Court was not permitted to use the "whites-only" bathrooms in the United States Supreme Court building. Supreme Court Justice SONIA SOTOMAYOR recently criticized the judiciary for a lack of diversity in every area of the legal profession at American University's Washington College of Law.[1] Mr. GARCIA is handicapped because his principal office is in New Mexico, and New Mexico does not provide reciprocal admission to Maryland licensed lawyers because Maryland does not provide reciprocal admission to New Mexico licensed lawyers. Mr. GARIA, as lawyer and citizen, is disabled by the challenged Local Rule, which affords him and other similarly situated Hispanic-Americans

---

[1] ABA Journal  November 21, 2013
http://www.abajournal.com/news/article/sotomayor_says_judiciary_is_missing_a_huge_amount_of_diversity/?utm_source=maestro&utm_medium=email&utm_campaign=daily_email

second-class treatment based on the location of his principal office, notwithstanding the well settled law that office location has nothing to do with competence of intellectual ability.  Mr. GARCIA will apply for admission to the U.S. District Court for the District of Maryland bar if the Local Rule is changed as requested in this Complaint.

22. Plaintiff DALE W. WORKMAN is a graduate of an ABA accredited school, and an experienced attorney in good standing admitted to the bar of the Florida Supreme Court, the Middle and Northern Districts of Florida, the Eleventh Circuit, and the Supreme Court. He has served with the Office of the Public Defender and as the Assistant Regional Counsel in Florida, and he has substantial civil experience. Mr. WORKMAN is under Rule 201 fully qualified to represent a criminal defendant, but he is disqualified from fully representing the same individual or anyone else in a civil matter. Mr. WORKMAN is disqualified from general admission privileges by Local Rule 701 because his principal office is in a state that does not provide reciprocal admission to Maryland licensed attorneys. He wants to move to Maryland and practice law there, but he is foreclosed from doing so because the Maryland District Court's Local Rules reinforce and buttress Maryland's segregationist polices against all out-of-state licensed attorneys. Mr. WORKMAN will apply for admission to the U.S. District Court for the District of Maryland bar if the Local Rule is changed as requested in this Complaint.

23.    Plaintiff WILLIAM PEYTON GEORGE is an American citizen, a member of the NAAMJP, and a graduate of the ABA accredited The American University Washington College of Law.  He has a Bachelor of Science degree in Math and Physics. He is a retired United States Army Reserve colonel, having graduated from the United States War College in Carlisle, PA, the Command and General Staff Course at Fort Leavenworth, KS, and the National Security Management Course, Industrial College of the Armed Forces, Washington, D.C. He has further served as the Chief of Litigation (IMA) in the Office of the Judge Advocate General, at the Pentagon, and as the Commander of the 10th Military Law Center, at Andrews Air Force Base in Maryland. Mr. GEORGE is also a graduate of the FBI Academy, in Quantico, VA and he has served as a Special Agent for the Federal Bureau of Information at its offices in Richmond and Lynchburg, VA, Newark and Atlantic City, NJ, and Washington, DC.  He has also served as a Congressional Liaison Officer on the personal staff of two Cabinet Members. Mr. GEORGE has also served as the managing partner of the Washington, DC office of Kansas City's Lathrop and Gage, and the Washington DC Office of Miles and Stockbridge.  Plaintiff is a lawyer in good standing and in active status and admitted to the bars of the Virginia Supreme Court, the District of Columbia Court of Appeals, and the Oklahoma Supreme Court. Additionally he is a member of the bar of the U. S. Supreme Court, the Fourth Circuit, the District of

Columbia Circuit and the Tenth Circuit Courts of Appeal plus the U. S. District Courts for the District of Columbia, the Eastern District of Virginia, and the Western District of Oklahoma.   Mr. GEORGE, as lawyer and citizen, is disabled by the challenged Local Rule because his principal office is in Virginia (Virginia is a State that denies admission to Maryland licensed lawyers).   He will apply for admission to the U.S. District Court for the District of Maryland bar if its admission rule is changed.

25. The Honorable Attorney General ERIC H. HOLDER, JR., is a defendant because federal law as set forth by the Supreme Court in interpreting the Constitution, and by Congress in enacting the *Rules Enabling Act* mandating federal Local Rule uniformity is not being uniformly followed or enforced. Attorney General HOLDER at a recent commencement speech at Baltimore's Morgan State University urged graduates to fight against policies that hurt minority groups.   Plaintiffs are following his advice. Multiple studies by Microsoft and others, as will be alleged hereinafter, report that minorities are grossly under represented at the bar.

26. The defendants are the very Hon. Chief Judge Deborah K. Chasanow, United States District Court for the District of Maryland, and her Honorable associate District Judges: Richard D. Bennett, Catherine C. Blake, James K. Bredar, Theodore D. Chuang, Marvin J. Garbis, Paul W. Grimm, George J. Hazel,

Ellen L. Hollande, Peter J. Messitte, J. Frederick Motz, William M. Nickerson, William D. Quarles Jr., George L. Russell III,  Roger W. Titus  These Honorable Article III judges are defendants because they have propounded and enforce Local Rule 701. This Rule serves as a role model for other United States District Courts to follow as an excuse to not follow *Frazier*, *Friedman*, and the *Rules Enabling Act*.

## FACTS

23. The American Bar Association (ABA) has twice in this 21st Century carefully studied and recommended the reciprocal admission Plaintiffs are petitioning for in this case.  The ABA MJP Commission (2002) and ABA Ethics 20-20 Commission (2012) studies were undertaken because continually evolving technology, client demands and a national (as well as global) legal services marketplace have fueled an increase in cross-border practice as well as a related need for lawyers to relocate to new jurisdictions.   These ABA studies are undertaken by renowned attorneys, from all over the United States, holding multiple public hearings all over the United States, and receiving comments from all arms of the public and bar, before reaching its recommendations, which are then submitted for further comment, and eventually to a 500 member ABA House of Delegates for approval or rejection.  The ABA Commissions members are experts in professional responsibility and bar admission.   These reciprocal licensing

findings of fact and conclusions are a matter of public record that this Court may judicially notice.

24. The US Supreme Court has held professional norms articulated by the American Bar Association are "(s)tandards to which we have referred as 'guides to determining what is reasonable.'" *Wiggins v. Smith*, 539 US 510, 524 (2003).  The ABA determined that over 40,000 lawyers in the last five years have been admitted on motion in 39 states and the District of Columbia. The ABA entered a factual finding that there was no evidence that these lawyers were a threat to the public or needed to take another bar exam. [2] The ABA squarely recommends that in light of ever increasing advances in technology that all states should adopt bar admission on motion for lawyers with three years of experience.  The Commission on Ethics 20-20 "found no reason to believe that lawyers who have been engaged in the active practice of law for three of the last seven years will be any less able to

---

[2] "The Commission also found unpersuasive the concern that passage of the bar examination is necessary to demonstrate knowledge of the law of the jurisdiction in which the lawyer is seeking admission. As explained above, more than 65,000 lawyers have obtained admission by motion in the last ten years, and there is no evidence from disciplinary counsel or any other source that these lawyers have been unable to practice competently in the new jurisdiction or have been unable to identify and understand aspects of the new jurisdiction's law that differ from the law of the jurisdiction where those lawyers were originally admitted. The Commission also concluded that the "local law" concern rests on the incorrect assumption that passage of the bar examination demonstrates competence in local law. In fact, an increasing number of jurisdictions use the Uniform Bar Examination, which typically does not require any knowledge of local law. And in jurisdictions that do test local law, the local law portion of the test is usually sufficiently small that bar passage does not turn on it."

practice law in a new jurisdiction than a law school graduate who recently passed the bar." The ABA concluded the failure to have admission on motion injures the public and the profession; women lawyers are further disproportionately injured.

25. These ABA judgments are game-changers because they demolish the doctrine that experienced attorneys should take a second licensing exam — much like historical myths that blacks were inferior, women were witches, and that literacy tests were necessary to vote — were superseded by cultural advances stemming from science and better evidence.

26. The ABA MJP Commission (2002) and Commission on Ethics 20/20 (2012) necessarily presumed — if by law, a layman is presumed to know the law, or can presumptively find it, and is presumptively capable of representing herself — *a fortiori* an experienced licensed attorney can do the same.  The hypothesis that a layman is presumptively competent, while on the other hand, an experienced lawyer is presumptively incompetent is implausible and irrational.  The ABA essentially concluded, in accordance with the Constitution of the United States, that if all men are created equal, then all lawyers are created equal.

27. The ABA has further recommended that the U.S. District Court policy of restricting practice privileges to lawyers who are admitted to the State bar in which the district is located should be eliminated.  Recommendation 8A was adopted by the ABA House of Delegates in 1995. The ABA concluded that "Given the global

nature of law practice today, parochial local rules are inefficient, unduly costly to clients and/or lawyers and anti-competitive."

28. The ABA has also obviously considered Supreme Court precedent. There is a presumption "that the lawyer is competent to provide the guiding hand that the defendant needs" applies even to young and inexperienced lawyers in their first jury trial and even when the case is complex. *United States v. Cronic*, 466 U. S. 648, 658, 664 (1984);  *See* also *Supreme Court of Virginia v. Friedman*, *supra*, 487 U.S. 59 (1988)(holding admission on motion is a constitutionally protected Privilege and Immunity, and the Supreme Court will not presume that non-resident attorneys or citizens are not fully qualified for bar admission on motion); *See Frazier v. Heebe, supra*, 482 U.S. 641, 649 (1987) (holding "the location of a lawyer's office simply has nothing to do with his or her intellectual ability or experience in litigating cases in Federal District Court.")

29. Another game changer, in addition to the ABA and the Supreme Court's holding in *Friedman* that bar admission on motion is constitutionally protected, the Uniform Bar Examination (UBE), which was created and pioneered by the National Conference of Bar Examiners (NCBE)[3] has weighed in on the issue. The NCBE developed the UBE in an effort to create uniformity between the various

---

[3] http://www.ncbex.org/assets/media_files/UBE/ABA-Uniform-Bar-Exam-2010-Council-9-14-v2-3.pdf

legal bar examinations administered by the states.[4]  "Law schools are teaching a national curriculum. The Uniform Bar Examination (UBE) recognizes that trend. In addition, lawyers are relocating more frequently."[5]  The UBE is intended to facilitate lawyer mobility across jurisdictional lines.  State Supreme Court justices in 13 States have adopted the UBE. The UBE does not test state law.  A novice lawyer admitted in any UBE state is eligible for reciprocal licensing in all UBE states.

30. Bedford T. Bentley, a Maryland licensing official and a member of the UBEC, relying upon the *ABA MacCrate Commission* (1992), has concluded that *one bar exam is more than enough* as they do not test nine out of ten fundamental lawyer skills.[6]

---

[4]

http://www.abajournal.com/magazine/article/one_for_all_uniform_bar_exam_picking_up_steam/

[5] Arizona State Bar Board of Governors: September Meeting Review (Sept. 2010).

[6] Robert MacCrate is the distinguished former chairman of the ABA's "Task Force on Law Schools and the Profession" (1992).  The well-regarded "MacCrate Report" describes the skills and virtues necessary to be an effective lawyer.   The "MacCrate Report" identifies ten fundamental lawyering skills:
(1) problem solving, (2) legal analysis and reasoning, (3) legal research,
(4) factual investigation, (5) communication, (6) counseling, (7) negotiation,
(8) litigation and alternative dispute resolution, (9) the organization and
management of legal work, (10) professional self-development.

31. "A bar exam is a test of minimum competence to practice law." See Rebecca White Berch[7], "The Case for the Uniform Bar Exam, "*The Bar Examiner*, Feb 2009 p. 12. The purpose of this licensing test is public protection. The ABA and UBEC *have concluded that one bar exam is more than enough*. The ABA concluded the best evidence of minimum competence and public protection is actual experience in practicing law.  The UBEC concluded that even novice attorneys should not have to take a second licensing test.

32. The Obama Administration, through the Department of Defense, prepared a report outlining ways in which states could improve their multijurisdictional admission rules.  The report, entitled "Supporting Our Military Families: Best Practices for Streamlining Occupational Licensing Across State Lines," was presented by the First Lady MICHELLE OBAMA and JILL BIDEN, wife of Vice President JOE BIDEN, at a Pentagon event in February 2012.[8]

33. The report notes that military families face unique circumstances of having to move across jurisdictional lines far more often than other American

---

[7] The Honorable Rebecca White Berch is the Chief Justice of the Arizona Supreme Court and the Chair of the Uniform Bar Exam Commission. Justice Berch approached "this issue as a former bar examiner, question procurer, grader, and floor monitor, and now as a member of the state supreme court, which is charged with oversight of bar admissions."

[8] Amy Bushatz, *WH Pushes States to Ease Spouse License Rules,* Military.com (Feb.15, 2012), http://m.military.com/news/articlerss/wh-pushes-states-to-ease-spouse-license-rules.xml/1

families, making it difficult for an attorney spouse to gain admission to practice and earn a living before it is time to relocate to anther jurisdiction.[9]   Brad Cooper, head of the White House's Military Support Office noted, "Military families are asked to move again and again…oftentimes, that means they are coming into a new state which often requires different licensing and credentialing standards…The fact of the matter is that this transition is a huge headache and a barrier to employment for spouses."[10]   In effect, the Department of Defense and Obama administration, perhaps without knowing it, have recommended the same relief mandated by the Supreme Court's decision in *Friedman*.

34.  According to national studies commissioned by Microsoft, the law is diversifying at a much slower rate than other professions.   Microsoft found that 8.4% of the nation's lawyers are African Americans and Hispanics, though those minority groups represent more than 25% of the U.S. workforce. The Microsoft study suggests that bar passage rates are part of the problem. "A significant proportion of under-represented minorities who graduate from law school do not pass the bar," the report says.[11] The diversity pipeline is further clogged by Federal

---

[9] *Id.*

[10] *Id.*

[11] *See*  ABA Journal December 11, 2013
http://www.abajournal.com/news/article/law_lags_other_professions_in_minority_hiring_which_group_is_most_dramatica/?utm_source=maestro&utm_medium=email&utm_campaign=daily_email

District Court old boys club Local Rules that require all experienced attorneys to re-hurdle Balkanized State licensing barriers every time they move, or want to get admitted in the Federal District Court housed in a sister-state.

35.   *The Standards for Educational and Psychological Testing* (1999) (Published by the American Educational Research Association, American Psychological Association, and the National Council on Measurement in Education) (Standards) were developed "to provide criteria for the evaluation of tests, testing practices, and the effects of test use." *Id*.  at p. 2. "When tests are at issue in legal proceedings and other venues requiring expert witness testimony it is essential that professional judgment be based on the accepted corpus of knowledge in determining the relevance of particular standards in a given situation.  The intent of the *Standards* is to offer guidance for such judgments." *Id*. at 4.

36. The *Standards* also emphasize that evaluating acceptability (of a test) involves (a) professional judgment that is based on a knowledge of behavioral science, psychometrics, and the community standards in the professional field to which the tests apply; (b) the degree to which the intent of the standard has been satisfied by the test developer and user; (c) the alternatives that are readily available; and (d) research and experimental evidence regarding feasibility of meeting the standard." *Id*. at 4.

37.  Plaintiffs aver that Rule 701 which limits general admission privileges violates the legal industry licensing standards for reciprocal licensing established by the ABA and UBEC, and it trespasses the Supreme Court's holding that bar admission on motion is the norm for out-of-state licensed attorneys.

38. Plaintiffs aver that LCivR 101 (a) adopted a long time ago by majority vote of the honorable defendants functions in this 21st Century as a template for other United States District Courts to model that undermines the legal industry standard for reciprocal licensing, providing a monopoly for Maryland lawyers, disserving the purpose of the Federal Rules of Civil Procedure to provide uniform nationwide rules to facilitate the just, speedy, and inexpensive determination of every action, eviscerating the United States as a single entity, and undermining the integrity of the legal profession and the United States Judiciary by contravening the Supreme Court's holding that bar admission on motion for out-of-state attorneys is constitutionally protected.

### FIRST CAUSE OF ACTION
### VIOLATION OF 28 U.S.C. §§ 2071-72

39. The preceding allegations and the allegations in the subsequent causes of action are incorporated in this cause of action.

40. Plaintiffs are not aware of any published case challenging U.S. District Court "local" general admission rules decided pursuant to Title IV of the Judicial Improvements and Access to Justice Act of 1988.  (Public Law 100 -- 702).

Section 2071 is concerned with each court making local rules for itself. Section 2072 is concerned with the promulgation of the general rules of national applicability.

41. 28 U.S.C. § 2071. *Rule-making power*, provides:

(a) The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. ***Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title.*** (Emphasis added)

42.  28 U.S.C. § 2072. Rules of procedure and evidence; power to prescribe, provides,

(b) ***Such rules shall not abridge, enlarge or modify any substantive right.*** (Emphasis added)

43.  Section 2071, as noted above is concerned with each court making rules for itself.  Section 2071(a) incorporates the standard set forth in Section 2072. Thus, 2071 and 2072 added together means that District Court Local Rules **"*shall not abridge, enlarge or modify any substantive right.*"** (Emphasis added)." This is a standard of review higher than strict scrutiny because it applies to any substantive right, not just constitutional rights.

44. Local Rule 701 disables the mandatory constraint (*shall*) set forth in 28 U.S.C. § 2072(b) because it categorically modifies and enlarges the privileges of members of the bar of Maryland licensed attorneys by granting them general

admission privileges; and it categorically modifies and abridges the substantive rights of the Plaintiffs, and other members of the bar of the other State Supreme Courts, by denying them general admission privileges and rendering them second-class citizens.

45. Local Rule 701 abridges and modifies the substantive rights of Americans: to counsel, the right to association, and the right to petition the government for the redress of grievances by categorically excluding Plaintiffs and other highly qualified lawyers; and it categorically enlarges the substantive rights of the members of the Maryland Supreme Court.

46. Local Rule 701 disables the mandatory constraint (*shall*) set forth in 28 U.S.C. § 2072(b) because the Supreme Court has held that admission on motion is a constitutionally protected Privilege and Immunity, and the Supreme Court will not presume that non-resident attorneys or citizens are not fully qualified for bar admission on motion. *See Supreme Court of Virginia v. Friedman, supra*, 487 U.S. 59 (1988).

47. Local Rule 701 disables the constraint (shall) set forth in 28 U.S.C. § 2072(b) because the Supreme Court has held "the location of a lawyer's office simply has nothing to do with his or her intellectual ability or experience in litigating cases in Federal District Court." *See Frazier v. Heebe, supra*, 482 U.S.

641, 649 (1987). LCivR 101(e), in part, disqualifies the otherwise qualified Plaintiff solely on the basis of the location of their principal office.

48. The assumption underlying Local Rule 701 that bar admission in a preferred state is a necessary attribute of competence for U.S. District Court bar admission is antiquated; it flies in the face of the Local Rules in 34 District Courts that do not discriminate in bar admission; it turns upside down the ABA and UBEC recommendations for reciprocal admission.

49. The National Rules for federal bar admission are ratified or enacted by Acts of Congress. These include Supreme Court Rule 5, FRAP 46 and 5 U.S.C. 500(b). The National Rules for bar admission authorize admission to all sister-state attorneys, not just attorneys admitted in the Maryland Supreme Court. By contrast, District Court Local Rules are not ratified or enacted by Congress. Thus, Local Rule 701 disables the constraint set forth in 28 U.S.C. § 2072(b) because it abridges Plaintiffs substantive rights as members of the bar by authorizing them the rights to practice before federal administrative agencies, the United States Courts of Appeal, and the Supreme Court, but not in the District Court for the District of Maryland.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE SUPREMACY CLAUSE

50. The preceding allegations and the allegations in the subsequent causes of action are incorporated in this cause of action.

51. The state and federal courts are distinct and each has authority over its bar admission standards and members.  State licensing requirements which purport to regulate private individuals who appear before a federal instrumentality are invalid.  *Sperry v. Florida*, 373 U.S. 379, (1963) is the leading case.  The Supreme Court held that a "State may not enforce licensing requirements which . . . give the State's licensing board a virtual power of review over the federal determination that a person or agency is qualified and entitled to perform certain functions," and found that the state's licensing requirements could not govern practice before the PTO. *Id*. at 385, 388.  The Supreme Court concluded that applying state licensing requirements to practitioners appearing before the PTO would have a "disruptive effect," given that one-quarter of the attorney practitioners before the PTO would have been disqualified because they were not licensed in the state in which they were practicing." *Sperry*, 373 U.S. at 401.

52. Local Rule 701 for the same reasons has a "disruptive effect;" by vicariously adopting state law it unlawfully trumps the Supremacy Clause; the practical effect of this Federal Local Rule is to create a monopoly for Maryland attorneys.

53. In *Augustine v. Dept. of Veterans Affairs*, 429 F.3d 1334, 1341 (Fed. Cir. 2005), the question of whether federal law may adopt or incorporate state law standards as its own, was expressly raised and rejected. There, the Court held

28

incorporation "is controlled by the will of Congress. In the absence of a plain indication to the contrary . . . it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on state law." *Id*. at 1340. The presumption here again is that federal law does not incorporate state standards. *Id*. at 1342.   The Court further held that the purpose of the Congressional fee-shifting statute can be served only by allowing fees for representatives who are licensed as attorneys in any state or federal jurisdiction, without regard to the state licensing requirements of the state in which services were rendered. *Id.* at 1343. By the same reasoning, District Court Local Rules that incorporate state bar admission rules from a single state "impose . . . additional conditions" not contemplated by Congress.   *Sperry*, supra, 373 U.S. at 385.   These additional conditions are squarely opposed to the *Rules Enabling Act*, Sections 2071-72 noted above.

### THIRD CAUSE OF ACTION
### LOCAL RULE 701 VIOLATES THE FIRST AMENDMENT

54. The preceding allegations and the allegations in the subsequent causes of action are incorporated in this cause of action. The operations of the courts and the judicial conduct of judges are matters of utmost public concern. *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 839 (1978).   Litigation is a form of political expression. *In re Primus*, 436 U.S. 412, 428.   The First Amendment protects "litigation [as] a means for achieving the lawful objectives of equality by

all government." *NAACP v. Button*, 371 U.S. 415, 429 (1963).  It is thus a form of political expression. *Ibid*. "It is no answer to the constitutional claims … that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression."  *Id*. at 438-39.  Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid.  *Procunier v. Martinez*, 416 U.S. 396, 419 (1974).

### A.    Local Rule 701 Is Substantially Overbroad

55. A state law may be deemed constitutionally invalid if it is substantially overbroad. *Broadrick v. Oklahoma*, 413 U.S. 601 (1973).  A government regulation is substantially overbroad if it suppresses substantially more speech than necessary to achieve its goal.  *Id*. at 612.  Local Rule 701 chills more speech than necessary by categorically discriminating against all otherwise qualified lawyers, from States and the District of Columbia.

56. This categorical disqualification is patently overbroad, not narrowly tailored, and therefore unconstitutional.

### B.    Local Rule 701 Constitutes Unlawful Content and Viewpoint Discrimination

57. The Supreme Court has recognized that the basic analysis under the First Amendment has not turned on the motives of the legislators, but on the effect of

the regulation. *Young v. American Mini Theaters*,  427 U.S.  50, 78 (1975) The true motive behind the creation and adoption for LCvR 83.8 (a)(2) does not change the First Amendment analysis; it is its effect that we must look to in determining its constitutionality.

58. "A regulation that denies one group of citizens the right to address a selected audience on controversial issues of public policy is plainly viewpoint discrimination." *Consolidated Edison Co. v. Public Serv. Comn'n*, 447 U.S. 530, 546 (1980). "Viewpoint discrimination is thus an egregious form of content discrimination." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 US 819, 829 (1995); *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U. S. 37, 46 (1983).  "To permit one side of a debatable public question to have a monopoly in expressing its views is the antithesis of constitutional guarantees." *Madison Joint School Dist. No. 8 v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 175-176 (1976).  "A law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship. This danger is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official." *Lakewood v. Plain Dealer Publishing Co*, 486 U.S. 750, 763 (1988).

59. Local Rule 701 allows Maryland licensed attorneys to obtain a federal license and petition the federal courts and speak; whereas, it abridges the same

privileges by a host of hurdles for attorneys from 49 States and the District of Columbia the same precious freedoms.  Local Rule 701 is not a time, place, and manner restriction because it is not viewpoint and content neutral.[12]  Local Rule 701  permits licensing and debate by one group of otherwise qualified experienced attorneys while denying another group of otherwise qualified attorneys the same precious freedoms.  Therefore, 701 is content and viewpoint discrimination.

60.    Moreover, distinctions in the right to exercise First Amendment freedoms are subject to strict scrutiny.   In *Citizens United v. Federal Election Commission*, 130 S.Ct. 876, (2010), the Court held:

> Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers. By taking the right to speak from some and giving it to others, the Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice. The Government may not by these means deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration. The First Amendment protects speech and speaker, and the ideas that flow from each. *Id*. at 890
>
> …

---

[12] To be upheld as a constitutional time, place or manner restriction a permit requirement applying to First Amendment activity must "(1) be content-neutral, (2) be narrowly tailored to serve a significant government interest, and (3) leave open ample alternative channels of expression." *Ward v. Rock Against Racism*, 491 U.S. 781, 789-90 (1989). The Local Rule restrictions are not time, place, or manner restrictions because they are not content neutral.

Any effort by the Judiciary to decide which means of communications are to be preferred for the particular type of message and speaker would raise questions as to the courts' own lawful authority. Substantial questions would arise if courts were to begin saying what means of speech should be preferred or disfavored. *Id*. at 890

61. The basic premise underlying the Court's ruling in *Citizens United* is the proposition that the First Amendment bars regulatory distinctions based on a speaker's identity, including its "identity" as a corporation. *Id*. at 930 (Justice STEVENS in dissent). Courts, too, are bound by the First Amendment. *Id*. at 891. If corporations have First Amendment rights, it cannot be disputed Plaintiffs have First Amendment rights. An attorney's stock in trade is speech/advocacy, association and representing their clients, and petitioning for the redress of grievances.

62. Rule 701 further makes multiple differential licensing distinctions based on whether the lawyer is representing the government, or a criminal defendant, or a civil litigant.  These distinctions cannot survive strict scrutiny review.

63. The hypothesis that a layman is presumptively competent to represent themselves, unless he or she is mentally ill, while on the other hand, Plaintiff experienced lawyers from 49 states and the District of Columbia are presumptively incompetent makes no sense.  It is content and viewpoint discrimination. Therefore, LCvR 83.8 (a)(2) is unconstitutional.

\*\*\*

## C.      Local Rule 701 is An Unconstitutional *Prior Restraint*

64. Prior restraints on First Amendment rights are presumptively unconstitutional. *Southeastern Promotions, Ltd. v. Conrad*,  420 U.S. 546, 558, (1975). In its simple, most blatant form, a prior restraint is a law which requires submission of speech to an official who may grant or deny permission to utter or publish it based upon its contents. *Alexander v. United States*, *supra*, 509 U.S. 544, 556 . ( KENNEDY dissenting)

65. In *Citizens United v. Federal Election Com'n*, *supra*, 558 U.S. 310, 130 S. Ct. 876, 891 (2010), the corporation was barred from publishing its view in a film about Hilary Clinton. The First Amendment freedoms to advocacy, association, petition, and press are inextricably intertwined. Lawyers have a constitutional duty and function much like the press.  In *Citizens United* the Court affirmed:

> "**These onerous restrictions thus function as the equivalent of prior restraint by giving the FEC power analogous to licensing laws implemented in 16th- and 17th-century England, laws and governmental practices of the sort that the First Amendment was drawn to prohibit**. See *Thomas v. Chicago Park Dist.,* 534 U.S. 316, 320, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002); *Lovell v. City of Griffin,* 303 U.S. 444, 451-452, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *Near, supra,* at 713-714, 51 S.Ct. 625. Because the FEC's "business is to censor, there inheres the danger that [it] may well be less responsive than a court—part of an independent branch of government—to the constitutionally protected interests in free expression." *Freedman v. Maryland,* 380 U.S. 51, 57-58, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). When the FEC issues advisory opinions that prohibit speech, "[m]any persons, rather than undertake the considerable burden (and

sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech—harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas." 130 S.Ct. at 895-96.  (Emphasis added)

66. The Supreme Court held these FEC prior approval regulations on their face chilled the corporation's speech.

67. In the same way, Local Rule 701 restrains the Plaintiffs, and it chills otherwise qualified attorneys from 49 states and the District of Columbia from exercising their right to engage in speech in the Federal District Court in Maryland concerning matters of public concern, solely because they are not members of the Maryland Supreme Court.

68. If corporations have First Amendment rights, then lawyers have First Amendment rights. Requiring experienced, admittedly qualified attorneys to obtain prior approval from the Defendants' licensing official by passing another entry level licensing exam with highly subjective tests — "functions as a prior restraint analogous and equivalent to the licensing of printing presses in the 16th and 17th Century." *Ibid*.   The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.  *Elrod v. Burns*, *supra,* 427 U.S. 347, 373-74 (1976)

69. The American Bar Association's admission on motion conclusions are rendered by experts in the field and are state of the art in the lawyer licensing

industry. Experts rely on many forms of evidence for their conclusions. The National Conference of Bar Examiners ("NCBE") field of expertise is bar licensing. Dr. Susan M. Case writes a "Testing Column" for the NCBE in their Bible, *The Bar Examiner*.  She writes in the Testing Column, "The purpose of the bar examination is to determine the extent to which ***would-be lawyers have the requisite knowledge and skills to serve as newly licensed practitioners***." (Emphasis added) *See* Susan M. Case, "The NCBE Job Analysis: A Study of The Newly Licensed Lawyer" *The Bar Examiner* p. 52 (March 2013).

70. Similarly, the Honorable REBECCA WHITE BERCH is the Chief Justice of the Arizona Supreme Court and the Chair of the Uniform Bar Exam Commission.  The UBEC and NCBE work hand in hand. Justice BERCH and her UBEC colleagues are nationally recognized experts on bar admission.  She writes, "A bar exam is a test of minimum competence to practice law."  Berch. "The Case for the Uniform Bar Exam," *The Bar Examiner*, Feb 2009 p. 12 Justice BERCH approached "this issue as a former bar examiner, question procurer, grader, and floor monitor, and now as a member of the state supreme court, which is charged with oversight of bar admissions."  Her UBEC colleague, Bedford T. Bentley, Jr. writes, "The bar examination cannot and does not test many of the skills identified by the MacCrate Report as fundamental to the successful practice of law."  *See* Bentley, "Rethinking the Purpose of the Bar Examination," February 2009 p. 17,

*The Bar Examiner*. Thirteen States have adopted the UBE, which does not test State Specific law, and allows novice attorneys from these jurisdictions reciprocal admission.  The UBEC has essentially concluded that in this 21st Century *one bar exam is more than enough*.

71. Dr. Geoff Norman is an internationally recognized expert on testing. It is well known in the field of psychometrics that "Study after study demonstrates that it is almost impossible to get judges to agree on a score for essay tests. *See* Geoff Norman, "So What Does Guessing the Right Answer Out of Four Have to Do With Competence Anyway?" *The Bar Examiner*, p. 21 (Nov 2008).  According to the ABA *MacCrate* Report[13]  nine out of ten fundamental lawyer skills and virtues necessary to practice law are not measured on a bar exam, including: problem solving, legal research, factual investigation, communication, counseling, negotiation, litigation and alternative dispute resolution,  the organization and management of legal work, and professional self-development. It also does not measure a lawyer's constitutional duty to champion locally unpopular causes and vindicate federal rights.

72. Today, in order for a licensing test to be widely accepted it has to satisfy two standards.  The test has to be *valid* and *reliable*.  *Validity* is concerned with the

---

[13] Robert MacCrate is the distinguished former chairman of the ABA's "Task Force on Law Schools and the Profession" (1992).

test measuring the necessary purpose for the test.  For example, if you are going to test for AIDS the test has to validly measure AIDS.  *Reliability* is concerned with repeatability of test results, as in any scientific study.   The ABA has concluded bar exams for experienced attorneys are not a *valid* or *reliable* measurement of attorney competence.  It is not a *valid* test because it does not test nine out of ten fundamental lawyering skills.   It is not a *reliable test* because it is nearly impossible to get graders to agree on subjective test scores.

73. "A prior restraint involves a licensing provision that gives an official "unbridled discretion" to prohibit speech. *See City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988)."  The ABA Commission on Ethics 20/20, incorporating the findings of other experts has recognized the purpose of a bar exam is to test minimum competence for a new practitioner. Already licensed attorneys in good standing have already demonstrated both their competence, and that they are not a threat to the public; entry level tests for already licensed attorneys are an oxymoron. Hence, requiring experienced attorneys from disfavored states to pass another licensing test, when that test is neither valid nor reliable, is analogous to requiring blacks to take a literacy test in order to vote.  It is equivalent in this 21st Century to the licensing of printing presses in the 16th and 17th Centuries.

***

**D.     Local Rule 701 Constitutes Compelled Association that Abridges the First Amendment Right of Freedom of Association**

74. "The Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees*, 468 U.S. 609, 618  (1984).  The Court has long recognized that, because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State. *Ibid*.  "Moreover, the constitutional shelter afforded such relationships reflects the realization that individuals draw much of their emotional enrichment from close ties with others.  Protecting these relationships from unwarranted state interference therefore safeguards the ability to independently define one's identity that is central to any concept of liberty." *Ibid*.  An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in a group effort toward those ends were not also guaranteed. *Id*. at 622.  Government actions that may unconstitutionally infringe upon this freedom can take a number of forms. Among other things, government may seek to impose penalties or withhold benefits from individuals because of their membership in a disfavored group. *Ibid*.

75. The right to associate also includes a right *not* to associate. *Roberts v. United States Jaycees*, *supra*, 468 U.S. at 622. Here, as in *Roberts*, Rule 701 imposes penalties and withholds privileges based solely on Plaintiffs' licensing in disfavored non-reciprocity jurisdictions. As such, the Defendants bear the burden of proving the validity of the admission on motion rule, which it cannot meet because the U.S. Supreme Court has already held that admission on motion is a constitutionally protected Privilege and Immunity. *Supreme Court of Virginia v. Friedman, supra*, 487 U.S. 59 (1998). The Supreme Court has held that the location of a lawyer's office simply has nothing to do with his or her intellectual ability or experience in litigating cases in Federal District Court." Therefore, Local Rule 701 is invalid as it abridges Plaintiffs' right to associate, as well their other First Amendment rights to speech (advocacy) and petition.

### E. Rule 701 Violates the First Amendment Right to Petition

76. In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993), the Court in construing the right to petition held that litigation could only be enjoined when it is a sham. To be a sham, first, it must be objectively baseless in the sense that no reasonable litigant could expect success on the merits; second, the litigant's subjective motive must conceal an attempt to interfere with the business relationship of a competitor …through the

use of government process  — as opposed to the outcome of that process — as an anti-competitive weapon.  *Id*. at 60-61.

77.  Rule 701 violates the Petition Clause because it arbitrarily and irrationally presumes that the Plaintiffs, and other experienced lawyers from 49 States Supreme Courts and the District of Columbia will file sham petitions for an anti-competitive purpose, and only file sham petitions for an anti-competitive purpose unless they re-invent the wheel by taking and passing New Jersey's entry level bar exam.  There is no evidence that experienced attorneys in good standing will violate their professional responsibilities, and file sham petitions for an anti-competitive purpose.  Moreover, it would be delusional and irrational to believe that these experienced attorneys would violate their professional responsibilities and sacrifice their good standing and reputation in the states they are licensed.

78. The Supreme Court in the last twenty years has dramatically re-written in this technologically advanced Age of Information the ambit of the First Amendment protections.  "The whole point of the First Amendment is to protect individual speech that the majority might prefer to restrict, or that legislators or judges might not view as useful to the democratic process." *See McCutcheon et al. v. Federal Election*,  Supreme Court, docket 12-536  Slip Opinion p. 17 filed April 2, 2014 (holding restriction of aggregate limits on campaign contributions violates the First Amendment because they are not "closely drawn to avoid unnecessary

abridgment of *associational* freedoms.") (emphasis added) "If the First Amendment protects flag burning, funeral protests, and Nazi parades—despite the profound offense such spectacles cause—it surely protects political campaign speech despite popular opposition." (Slip Opinion, p. 2)

79. Here, if the First Amendment protects unlimited campaign contributions, corporate speech, flag burning, funeral protests during burials for American soldiers killed in the line of duty in Iraq, Nazi parades, dog fighting videos,[14] deliberate lies about winning the Medal of Honor,[15] it also protects Plaintiffs' association and petition rights that are abridged by the challenged Federal District Court bar admission segregation.

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE 5TH AMENDMENT
## EQUAL PROTECTION CLAUSE

80. The preceding allegations and the allegations in the subsequent causes of action are incorporated in this cause of action.

81. Local Rule 701 is plainly unlawful under *Frazier v. Hee*be because it is based on the location of a lawyer's office.

---

[14] *United States v. Stevens*, 130 S.Ct. 1577 (2010)

[15] *Unted States v. Alvarez*, , 567 U. S. ____, 132 S.Ct. 2537 (2012)

82. It would be anomalous to hold Supreme Court *Friedman* precedent on bar admission on motion is not equally relevant to federal bar admission that incorporates state law under the 5th Amendment Equal Protection Clause.

83. *In re Lockwood,* 154 US 116 (1894), Belva A. Lockwood was admitted to practise (sic) law in the Supreme Court of the District of Columbia, and the bars of several States of the Union. The Virginia Supreme Court rejected her application for admission because she was a woman, citing *In Bradwell v. The State*, 16 Wall. 130 (1873), where the Supreme Court "held that the right to practise (sic) law in the state courts was not a privilege or immunity of a citizen of the United States."

84. In 1873, in *Bradwell*, a woman was denied the right to practice law by the State of Illinois. A concurring opinion emphasized,

> "The paramount destiny and mission of women are to fulfil (sic) the noble and benign offices of wife and mother. This is the law of the Creator. And the rules of civil society must be adapted to the general constitution of things, and cannot be based upon exceptional cases." *Id*. 141-42

85. *Lockwood* and *Bradwell* are obviously antiquated, but they show the history of our law.

86. In the seminal case *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274 (1985), the Supreme Court held,

> The lawyer's role in the national economy is not the only reason that the opportunity to practice law should be considered a "fundamental right." We believe that the legal profession has a noncommercial role and duty that

reinforce the view that the practice of law falls within the ambit of the Privileges and Immunities Clause.[fn11] Out-of-state lawyers may — and often do — represent persons who raise unpopular federal claims. In some cases, representation by nonresident counsel may be the only means available for the vindication of federal rights. *Id*. at 281-82.

87. *Piper* recognizes there is no First Amendment difference between the constitutional duty of a lawyer to petition and a newspaper to publish.

88. More particularly, *Supreme Court of Virginia v. Friedman*, 487 U.S. 59 (1988) squarely holds that bar admission on motion for sister-state attorneys is a constitutionally protected Privilege and Immunity.  Virginia argued Ms. Friedman could take the bar examination, and thus, the Clause was not offended. The Court rejected this contention stating, "The issue instead is whether the State has burdened the right to practice law, a privilege protected by the Privileges and Immunities Clause, by discriminating among otherwise equally qualified applicants solely on the basis of citizenship or residency.  We conclude it has." *Id*. at 67.  The norm under the Privileges and Immunities Clause is comity, i.e. equal treatment.   The Supreme Court stated, "we see no reason to assume that nonresident attorneys who, like Friedman, seek admission to the Virginia bar on motion will lack adequate incentives to remain abreast of changes in the law or to fulfill their civic duties." *Id*. at 69.

89. As in *Friedman*, Rule 701 discriminates among otherwise equally qualified sister-state attorneys in bar admission on motion, and it is thus

unconstitutional. It further offends the constitution because it provides the

Plaintiffs in this 21st Century the same archaic privileges provided to blacks and

women.   Local Rule 701 is plainly unlawful because it undermines both

*Friedman's* holding admission on motion is constitutionally protected and the

ABA's recommendations for reciprocity. The ABA Commissions were composed

of experts who carefully studied the issue, and they also relied on other experts in

formulating their conclusions. There is no evidence the ABA in formulating its

expert opinion got it wrong.

### A.   RATIONAL BASIS REVIEW

90. Plaintiffs aver Local Rule 701 violates the Fifth Amendment Equal

Protection Clause even under a rational basis standard of review.

91. Rule 701 on its face grants a monopoly on the exercise of constitutional

rights. Monopolies in the opportunity to exercise constitutional rights are *per se*

unlawful.

92. A State can require high standards of qualification, such as good moral

character or proficiency in its law, before it admits an applicant to the bar, but any

qualification must have a rational connection with the applicant's fitness or

capacity to practice law." *Schumacher*, 965 F.2d at 1269, citing *Schware v. Board*

*of Bar Examiners*, 353 U.S. 232, 239 (1957).  The ABA and UBEC have carefully

studied this issue, concluding the failure to have reciprocal bar admission injures the public, recommending reciprocal admission for all attorneys.

93. In this light, there is no rational connection between bar admission in Maryland and many of exclusive areas of federal practice that have nothing to do with Maryland state law: i.e., patent law, federal criminal law and procedure, federal civil procedure, bankruptcy, federal taxation, admiralty, etc.

94. The Third Circuit has recognized, "We can discern no reason why, as a general matter, experienced graduates of unaccredited law schools from reciprocal states would be more competent to practice law than experienced graduates of unaccredited law schools from nonreciprocal states." *Schumacher v. Nix*, *supra*, 965 F. 2d 1262, 1270 footnote 11 (3rd Cir. 1992) Thus, under Third Circuit law there is no rational reason to exclude Plaintiffs, and otherwise qualified ABA graduates and attorneys, from federal admission.

95. Our Union was founded on the principle of "No taxation without representation." Local Rule 701 denies Plaintiffs the opportunity to represent their clients and to petition for redress of grievances in the U.S. District Court in Maryland that Plaintiffs pay for with their tax dollars.

96. Rule 701 has the practical effect of targeting a locally unpopular group. Targeting an unpopular class is not rational. It is beyond cavil that it is constitutionally prohibited to single out and disadvantage an unpopular group.

*United States v. Windsor*, __ U.S. __, 133 S.Ct. 2675 (2013).  In *Romer v. Evans*, 517 U.S. 620 (1996), the Court held that an amendment to a state constitution, ostensibly just prohibiting any special protections for gay people, in truth violated the Equal Protection Clause, under even a rational basis analysis. In *Romer*, the Supreme Court struck down Colorado's Constitutional Amendment 2 because, the Court held, "[w]e cannot say that Amendment 2 is directed to any identifiable legitimate purpose or discrete objective. It is a status-based enactment divorced from any factual context from which we could discern a relationship to legitimate state interests; it is a classification of persons undertaken for its own sake, something the Equal Protection Clause does not permit." *Id*. at 635. The Supreme Court deemed this "class legislation ... obnoxious to the prohibitions of the Fourteenth Amendment." *Ibid*.

97. Rule 701, similar to the laws targeting gays and lesbians, is obnoxious status-based rule making enacted to target an unpopular group, otherwise qualified lawyers not admitted in the Garden State. This is discrimination for the sake of discrimination, and not a legitimate governmental interest.

98.  If by law, a layman is presumed to know the law, or can presumptively find it, and is presumptively capable of representing herself — *a fortiori* an experienced licensed attorney can do the same.  The hypothesis that a layman is

presumptively competent, while on the other hand, an experienced lawyer is presumptively incompetent is implausible and irrational.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE 5TH AMENDMENT**
**DUE PROCESS CLAUSE**

99. The preceding allegations and the allegations in the subsequent causes of action are incorporated in this cause of action.

100. Plaintiffs are denied procedural and substantive due process because the same defendant judges who promulgate and enforce the Local Rules are the same judges who decide whether they are unlawful, and no man can be a judge in his own case.

101.  Plaintiffs are denied procedural and substantive due process because the Honorable Attorney General has a Catch-22 conflict of interest because he has a duty to defend the government and a duty to uniformly enforce the law, as no man or fiduciary can wear two hats.

102. Plaintiffs assert their right to injunctive and declaratory relief under 28 U.S.C. §2201.   There is an actual controversy of sufficient immediacy and concreteness relating to the legal rights of the Plaintiffs and their injury, and their relation to and the duties of the Defendants, to warrant relief under 28 U.S.C. § 2201.

103. Plaintiffs therefore request the following relief:

- An Order declaring Local Rule 701 unconstitutional and enjoining its enforcement.

- An Order declaring that District Court Local Rules shall provide the opportunity for general bar admission privileges to all sister-state attorneys admitted to the highest court of any state.

- An Order admitting Plaintiffs to the bar of the District Court.

- Costs.

- Attorney fees.

- Grant such other relief as may be just and proper.


Dated:  June 27, 2014             /s/ *Raymond Carignan*

By: Raymond Carignan, Esq.
Raymond Carignan, Esq., LLC
Maryland Bar ID
Attorney for Plaintiffs NAAMJP et. al.
10176 Baltimore National Pike, Suite 202
Ellicott City,  MD 21042
Phone: 410-703-2703
Email: ray.carignan@raycarignan.com


/s/ *Joseph Robert Giannini*

Joseph Robert Giannini, Esq.
Attorney for Plaintiffs NAAMJP et. al.
PA State Bar ID 38814
12016 Wilshire Blvd. Suite 5

Los Angeles, CA 90025
Phone 310 207 1776
Email j.r.giannini@verizon.net